*In re* MARRIAGE OF MARY JANE VELLA, Petitioner-Appellee, and
FRANK P. VELLA, SR., Respondent-Appellant.

Second District   No. 2—91—1469

Opinion filed November 4, 1992.—Rehearing denied December 8, 1992.

David L. Martenson, of Martenson & Associates, of Rockford, for appellant.

Daniel J. Cain, of Sreenan, Cain & Sullivan, P.C., of Rockford, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Petitioner, Mary Jane Vella, filed a complaint for dissolution of marriage from respondent, Frank P. Vella. Respondent filed a motion to strike those portions of petitioner's pleadings requesting maintenance and a division of assets. Respondent alleged that a 1984 marital settlement agreement precluded the court from granting that relief. The trial court held that the parties' marital settlement agreement was neither valid nor enforceable because it was not in compliance with the requirements of section 502 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1991, ch. 40, par. 502). Thus, the assets were allocated as if they were marital property. The court also reserved the power to award maintenance and attorney fees if respondent failed to comply with the divorce decree. Respondent timely appeals. We reverse and remand.

On September 17, 1984, petitioner filed a complaint for dissolution of marriage against respondent. In December 1984, the parties executed a marital settlement agreement. This agreement provided for the distribution of both cash and property. The divorce proceeding was subsequently dismissed for want of prosecution on May 8, 1986. Nevertheless, pursuant to the marital settlement agreement, petitioner obtained the marital home at Crestview Drive, $26,000 in cash, plus the household goods and furnishings. Respondent received a one-third interest in vacant property on Perryville Road and $10,000 in cash. The agreement also provided that each party waived maintenance on the condition that the court approved the property settlement and accepted the waivers.

In mid-1988, the Perryville property was sold for $800,000. Respondent received one-third of these proceeds after taxes. After the sale of this property, the parties attempted a reconciliation. In connection with this conciliation, respondent placed $200,000 into a certificate of deposit at the Amcore Bank in respondent's name, with his three children as beneficiaries.

The parties' reconciliation failed resulting in the present dissolution of marriage on appeal. On August 3, 1990, the court below granted a judgment of dissolution. The trial court denied the enforce-

ability of the previous marital settlement agreement because no court had ever approved its terms pursuant to section 502(d) of the Act. Specifically, the court found that certain language in the agreement indicated that the agreement was made attendant to the pending dissolution matter and that the dismissal of that matter rendered the marital settlement agreement invalid. Thus, the court determined that the following existed as marital property at the time of the judgment: the Crestview marital home ($75,000), the household goods and furnishings in petitioner's possession ($2,000), Amcore stock owned by respondent and his brother ($16,000), Continental stock ($7,734), the one-third of the remaining unsold parcel of the Perryville property ($8,833), the funds respondent withdrew from the Amcore Bank on May 31, 1990 ($354,378), and withdrawals respondent made from his checking account on June 1 through 14, 1990 ($12,750).

Petitioner was awarded the Crestview marital residence, the household goods and furnishings in that residence, and her personal property. She was also awarded the Continental and Amcore Bank stocks, plus $137,497 to be paid by respondent. Respondent was awarded his share of the Perryville property, his personal property and any sum that he might have remaining.

The court reserved petitioner's right to maintenance and attorney fees until further order of court and denied respondent's right to the same. The reservation of these awards was made subject to respondent's compliance with the court's order.

On appeal, respondent asserts that (1) the trial court erred in denying the enforceability of the marital settlement agreement; (2) the trial court erroneously awarded petitioner property that was not marital and was not owned by the parties; (3) the court erred by reserving maintenance and attorney fees subject to respondent's compliance with the court's orders; and (4) the mathematical computations of the trial court were incorrect.

■ Respondent first asserts that the trial court erred in denying the enforceability of the marital settlement agreement. In this vein, respondent argues that the agreement should be treated as a contract which is binding on the parties, that the agreement's validity has not been tainted by fraud or duress, and that the parties have complied with the terms of the agreement without rescinding it. We agree.

The trial court's decision to invalidate the marital settlement agreement was based primarily upon section 502 of the Act, which provides in part:

"(a) To promote amicable settlement of disputes between parties to a marriage attendant upon the dissolution of their mar-

riage, the parties may enter into a written or oral agreement containing provisions for disposition of any property owned by either of them, maintenance of either of them and support, custody and visitation of their children.

    (b) The terms of the agreement, except those providing for the support, custody and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the agreement is unconscionable." (Ill. Rev. Stat. 1991, ch. 40, pars. 502(a), (b).)

The court also found that the parties had failed to make an agreement otherwise valid under section 503(a)(4), which provides in part:

    "(a) For purposes of this Act, 'marital property' means all property acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property':

* * *

    (4) property excluded by valid agreement of the parties." Ill. Rev. Stat. 1991, ch. 40, par. 503(a)(4).

The trial court also placed much reliance on the case of *Stern v. Stern* (1982), 105 Ill. App. 3d 805, in reaching its decision. In *Stern*, the defendant argued that, since section 502 applies only to agreements attendant upon a dissolution of marriage, a marital settlement agreement entered into was a nullity because the parties' marriage had never been dissolved. We determined, therein, that the defendant's attempt to restrict review of the agreement pursuant to section 502 was deficient for several reasons. First, the language of the agreement itself provided that it was drawn pursuant to section 502 *and* section 503 of the Act. Second, the defendant testified that she had voluntarily signed the agreement after consulting her attorney, was satisfied with its terms, and wished the pending dissolution proceeding to be dismissed. Third, the designation of the statute pursuant to which the agreement was reached was not an operative provision of that agreement. Accordingly, we held that the marital settlement agreement, like any other contract, was the proper subject of judicial construction for purposes of a declaratory judgment and that its validity was not contingent upon the entry of a divorce decree. *Stern*, 105 Ill. App. 3d 805.

·    In the present case, the trial court distinguished the facts from those in *Stern* and found that an agreement otherwise valid under section 503 had *not* been entered into. Therefore, the court concluded that the marital settlement agreement could not stand because it was

made pursuant to section 502 and because no court had ruled on its conscionability. We disagree. In our view, the terms of the agreement itself, combined with the actions of the parties in performing the agreement, lead us to conclude that the agreement was a valid, post-nuptial contract.

First, in addition to the agreement's validity pursuant to general principles of contract law, the terms of the agreement satisfy the requirements necessary to form a valid contract pursuant to section 503(a)(4). In *Stern*, we held that the agreement was capable of falling within the ambit of section 503 because the agreement specifically stated that it was made pursuant to sections 502 *and* 503. Since neither provision was made an operative element of the agreement, we determined that section 503(a)(4) could apply on its own. Here, on the other hand, the agreement does not state the sections pursuant to which it was made. Admittedly, the marital settlement agreement was made at a time when the parties anticipated a dissolution of their marriage. In fact, the opening paragraphs indicate that the parties believe it to be in their best interest to settle between themselves their respective rights to property, et cetera, in light of irreconcilable differences which have led to a recent filing for dissolution of their marriage. The parties also expressed the desire that the agreement be incorporated by reference in the judgment of dissolution of their marriage.

Nevertheless, we determine that the validity of the agreement was not made expressly dependent upon the entry of a divorce decree. As in *Stern*, the statute pursuant to which the agreement was reached is not an operative provision of the agreement. In addition, the agreement expressly provides that it is the intention of the parties "that the property settlement provided for in [the] agreement shall constitute a complete adjustment of the property rights of the parties hereto" and that "the terms of [the] agreement *shall be binding upon the parties upon the execution date* above." (Emphasis added.) Moreover, article III of the agreement provides:

"ARTICLE III. *Division of Marital and Property Rights*.

1. The husband shall quit claim to the wife his interest in the martial [*sic*] residence, legally described as follows, and the wife shall hold said property free and clear of any claim by husband:
 * * *

2. The wife shall quit claim to the husband any interest she may have in the property legally described as follows, and the husband shall hold said property free and clear of any claim by wife:

***

3. Each party shall keep as [his/her] own property, free and clear of any interest held or claimed by the other, all of the bank accounts presently held or possessed by them.

4. The wife shall hold as her sole and separate property all of the household goods and furnishings presently located in the marital home.

5. The husband shall be responsible for and pay one-half of any uncovered medical bills outstanding for the wife up to the date of this agreement.

6. Any property acquired by either party after the date of this agreement shall be the separate, non-marital property of the party acquiring it.

7. Each party shall be responsible for his/her own individual expenses.

8. The husband shall vacate the marital home upon the signing of this agreement."

These unambiguous statements clearly indicate the intent of the parties to be bound upon execution of the agreement, rather than upon approval by the court.

The trial court below relied upon the following passages from the marital settlement agreement when it determined that court approval was necessary:

"ARTICLE II. *Maintenance.*

1. Both husband and wife agree to waive and give up any claim for maintenance, each from the other. It has been explained to the parties that they both have the right to claim maintenance, each from the other, and that *if the court approves the property settlement and accepts their respective waivers* by or through their respective attorneys, said waiver shall be final and irrevocable.

* * *

ARTICLE V. *General Provisions.*

* * *

6. The parties desire that this agreement be incorporated by reference in the judgment of dissolution of marriage and that its terms be enforceable by all the remedies available for the enforcement of a judgment including contempt, but that the terms shall not be set forth in the court's judgment." (Emphasis added.)

With respect to article II, the trial court focused upon the conditional language which we have highlighted. In our view, this language

merely sets forth the conditions necessary for a maintenance waiver to take effect. We cannot reasonably apply the same conditional language to the remainder of the agreement.

In addition, the language in article V expressing the parties' desire to incorporate the agreement into the anticipated judgment of dissolution cannot, by itself, be read as an expression that the validity of the agreement is somehow contingent upon the entry of a divorce decree. While the impending divorce may have been a factor which motivated the parties to execute the agreement, it was not a condition necessary for the terms of the agreement to become effective.

Second, it is apparent that substantial performance of the contractual terms took place after its execution. It is significant that the parties did not wait for the court's approval before they began performance on the agreement. Although the question of substantial performance is to be decided on the facts of each case, the question of whether there has been a receipt and enjoyment benefits is an important one to consider. *Joray Mason Contractors, Inc. v. Four J's Construction Corp.* (1978), 61 Ill. App. 3d 410.

Here, it is uncontested that respondent, in conformance with the agreement, vacated the marital home and conveyed the specified real estate and personal property to petitioner. Respondent also transferred $26,000 to petitioner. On her part, petitioner signed a quitclaim deed conveying her interest in the Perryville property to respondent. In light of this performance, which involved a mutual enjoyment of benefits, we cannot say that the agreement never became effective. The actions of the parties in carrying out the agreement are an indication that the divorce decree was neither a controlling element of nor a condition precedent to the agreement.

We agree it is possible that an agreement made pursuant to section 502 could fail to become effective where the intent of the parties is to make the agreement contingent upon a court's approval attendant to a subsequent divorce decree. For example, a husband and wife may wish to agree upon a division of their property, in connection with their divorce. When the divorce proceedings are abated, the parties may choose to ignore the agreement and thereby rescind it as they would any other contract. See *In re Marriage of Burgess* (1984), 123 Ill. App. 3d 487 (which applies this reasoning in the context of a prenuptial agreement).

Here, however, where two parties enter into a marital settlement agreement, and where performance of the agreement is carried out, notwithstanding the dismissal of the divorce proceedings, we view the agreement as a valid allocation of marital and nonmarital property

rights pursuant to section 503(a)(4) of the Act. Ill. Rev. Stat. 1991, ch. 40, par. 503(a)(4).

■■ Petitioner also claims on appeal that the agreement was invalid because it was obtained through fraud and duress. We determine that this objection lacks merit because it is raised for the first time on appeal. No similar objection to the agreement was pleaded below and, thus, the proof offered is defective. (*Keno & Sons Construction Co. v. La Salle National Bank* (1991), 214 Ill. App. 3d 310; *Tomaso v. Plum Grove Bank* (1985), 130 Ill. App. 3d 18.) Petitioner also alleges that a subsequent trust formed by the parties superseded the earlier marital settlement agreement. However, we will not entertain this position because it is insufficiently supported by argument or supportive authority. 134 Ill. 2d R. 341(e)(7).

■■ Respondent next argues that the trial court erroneously awarded petitioner property that was neither marital nor owned by the parties. When the parties separated in May 1990, respondent withdrew over $300,000 from his bank account. Approximately $200,000 was due to the sale of the Perryville property. The rest, according to respondent, results from monies held for his mother and as a result of his own savings. Upon withdrawing these sums, respondent paid $172,000 to his brother which, respondent alleged, represented a business debt. Respondent also set aside $100,000 which he held in trust for his mother. The trial court determined that these monies were marital property and divided them accordingly. In light of our validation of the marital settlement agreement, the trial court's decision on this issue cannot stand. Article III, paragraph 3, of the marital settlement agreement provided that each party shall keep as his/her own property all the bank accounts presently held by each of them. Therefore, the amounts respondent withdrew from his bank account were his own individual property.

■■ Respondent next argues that the court erred by reserving maintenance and attorney fees while barring respondent's right to maintenance. In its memorandum of decision, the court reserved the petitioner's right to maintenance. The court ruled that it would bar maintenance if respondent complied immediately with the order. Without commenting on the propriety of reserving an award of maintenance as a means of enforcing a judgment, we reverse the trial court's holding on this issue and remand the cause for a determination of maintenance. Article II of the marital settlement agreement specifically provides that the parties waive their respective claims for maintenance if the court approves. Since no such ruling was made, we remand for further consideration of this issue. Moreover, the issue of

attorney fees is not addressed in the marital settlement agreement and, thus, should be addressed by the trial court on remand.

Finally, the issue related to the trial court's mathematical computations in the context of its allocation of cash between the parties is moot in light of our validation of the marital settlement agreement.

For the above reasons, we reverse the trial court's decision and hold that the marital settlement agreement is an enforceable contract. We, therefore, remand the cause for an allocation of assets consistent with this opinion and for a determination of the appropriateness, extent and nature of maintenance with respect to both parties and for the possible award of attorney fees.

Reversed and remanded.

GEIGER and BOWMAN, JJ., concur.