*In re* MARRIAGE OF EDWIN C. PARKER, Petitioner-Appellant, and BARBARA T. PARKER, Respondent-Appellee.

Second District   No. 2—92—1030

Opinion filed June 7, 1993.

Sarane C. Siewerth and Donald C. Schiller, both of Schiller, DuCanto & Fleck, Ltd., of Chicago, for appellant.

Jay J. Johnston, C. Jeffrey Thut, and Julia Carpenter, all of Hall, Roach, Johnston, Fisher & Bollman, of Waukegan, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Petitioner, Edwin Parker (Edwin), brings this second appeal concerning the distribution of property to respondent, Barbara Parker (Barbara), from the sale of Edwin's stock in Dur-O-Wal, Inc. (Dur-O-Wal). The court awarded Barbara $520,800 from the proceeds of the sale of Dur-O-Wal stock in the original trial action. Edwin appealed, and this court affirmed in part, reversed in part, and remanded with instructions to redistribute the proceeds from the sale of the stock consistent with the considerations set forth in section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1991, ch. 40, par. 503(d)). (*In re Marriage of Parker* (1991), 216 Ill. App. 3d 672, 680.) The trial court awarded Barbara $520,800 from the proceeds of the stock on remand and Edwin appeals that decision. We affirm.

The facts in this case are fully presented in the previous appellate opinion and need not be repeated. However, a brief recitation of the history of this case is necessary to explain the context of this appeal.

Edwin and Barbara began negotiating a marital settlement agreement (Agreement) in August 1986. Edwin's financial statement disclosed ownership of 5,000 shares of Dur-O-Wal common stock with a book value of $142,000. Edwin stated that he was trying to sell the company for more than book value.

The trial court entered a judgment of legal separation on December 29, 1986, which incorporated the Agreement into the judgment order. Dur-O-Wal was sold in October 1987, with total proceeds attributable to Edwin of approximately $4,083,000. In April 1988, Barbara filed a petition for relief from the judgment of legal separation pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1401). Her petition alleged, among other things, that she was emotionally distressed and could not have understood the consequences of the proceedings which produced the financial settlement in the Agreement. Barbara also alleged that Edwin made misrepresentations in his statement as to the value of his Dur-O-Wal stock.

The trial court found that the valuation of the Dur-O-Wal stock was "patently incorrect" and ordered that part of the property settlement agreement which referred to the valuation of the 5,000 shares of Dur-O-Wal be vacated and the cause set for hearing. The trial court found the Agreement unconscionable and ordered an additional distribution of $520,800 to Barbara after a hearing on evidence of the value of the stock and the parties' financial conditions.

Edwin appealed. This court reversed the distribution of additional Dur-O-Wal stock proceeds to Barbara, finding the trial court's impression of Edwin's alleged misconduct was against the manifest weight of the evidence and therefore prejudiced Edwin. This court instructed the trial court that on remand the Dur-O-Wal stock was to be redistributed in accordance with the factors listed in section 503(d) of the Act. Ill. Rev. Stat. 1991, ch. 40, par. 503(d).

The parties stipulated that all evidence was before the court at the hearing upon remand. Counsel for the parties only presented new closing arguments on the issue of distribution of the Dur-O-Wal stock. The appellate court had previously found that the value of the stock to be disbursed was $2,002,500. This amount reflected Edwin's share of the stock proceeds minus corporate debts, sale expenses, and Federal and State taxes.

Edwin argued that the original Agreement should be enforced because Barbara had stated in her deposition that the Agreement was what she wanted even if Edwin's companies were worth more than she was aware of at the time. Barbara was to receive maintenance of $4,620 per month tax-free, with a yearly cost-of-living increase in the property division. This amount included $574 for mortgage payments which would terminate upon satisfaction of the mortgage debt. Barbara also received considerable financial perquisites, including the marital residence, a new car every three years, and medical insurance. Edwin theorized that Barbara's maintenance was actually more like an annuity which took the place of a multimillion dollar property settlement. Edwin argued that his expert had valued Barbara's maintenance at a present cash value of $3.2 million, and Edwin concluded that his obligation to pay the support should be treated like a debt and subtracted from Edwin's assets. Edwin argued further that the value of the proceeds available to be distributed should be reduced to $1,302,500 given that the tax consequences of the sale were not speculative since Dur-O-Wal was in the process of being sold before the Agreement was executed and Barbara was aware of this fact.

The trial court found that Barbara's maintenance package had a value but was not a distribution of property. The trial court noted that

although the value of Barbara's maintenance rested on many assumptions, the value of the hard assets could readily be determined. The trial court concluded the division of marital property could not be equated with percentages or mathematical formulas and, basing its decision solely on the 11 factors in section 503(d) of the Act, awarded Barbara $520,800 from the proceeds of the Dur-O-Wal stock.

The sole issue on appeal is whether the trial court abused its discretion in distributing these additional stock proceeds to Barbara. A trial court's action on remand is to be determined from the appellate court's mandate, and when a reviewing court remands a case with specific instructions, they must be followed exactly. (*Aguilar v. Safeway Insurance Co.* (1991), 221 Ill. App. 3d 1095, 1099.) The trial court's orders as to property division will not be disturbed on review in the absence of an abuse of discretion. (*In re Marriage of Pittman* (1991), 212 Ill. App. 3d 99, 101.) A court's discretion will be considered abused only when no reasonable man would agree with the decision reached by the trial court. (*Pittman*, 212 Ill. App. 3d at 101.) Here, the trial court was to apply the facts of the case to the considerations of section 503(d) of the Act, which provides as follows:

"(d) In a proceeding *** for disposition of property following dissolution of marriage ***, the court *** shall divide the marital property *** in just proportions considering all relevant factors, including:

(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;

(5) any obligations and rights arising from a prior marriage of either party;

(6) any antenuptial agreement of the parties;

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(8) the custodial provisions for any children;

(9) whether the apportionment is in lieu of or in addition to maintenance;

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income; and

(11) the tax consequences of the property division upon the respective economic circumstances of the parties." (Ill. Rev. Stat. 1991, ch. 40, par. 503(d).)

Barbara and Edwin had a 31-year marriage during which she contributed as a homemaker and mother. Barbara is not employed; thus, her financial resources and ability to generate future income are far less than Edwin's, who earns in excess of $200,000 per year. Edwin received $3,600,000 and Barbara received $874,000 in hard assets under the original Agreement. Barbara also received a considerable amount of maintenance and other financial perquisites.

■ Edwin asserts that section 503(d), which directs the court to consider "all relevant factors" in distributing marital property, requires this court to consider the original Agreement prior to the sale of Dur-O-Wal as the controlling document here since it represented the intended, performed and enforceable bargain between the parties. Edwin cites *In re Marriage of Vella* (1992), 237 Ill. App. 3d 194, 200-01, in support of this argument, a case in which this court found that "where two parties enter into a marital settlement agreement, and where performance of the agreement is carried out, notwithstanding the dismissal of the divorce proceedings, we view the agreement as a valid allocation of marital and nonmarital property rights." We find Edwin's argument, though cleverly conceived, is inapposite. Unlike *Vella*, the trial court here specifically vacated that portion of the Agreement regarding the distribution of the Dur-O-Wal stock. Since the only issue on remand is the distribution of the stock proceeds, Edwin cannot ignore the vacatur and argue that the Agreement controls the outcome of the case.

■ Edwin argues that Barbara "stipulated" to the Agreement and that this factor was dispositive of the issue of enforcing the original Agreement. However, that portion of Barbara's deposition to which Edwin refers does not suggest she agreed to receive an inequitable distribution or bargain away her property rights. The record discloses that Barbara was trying to follow advice given to her that the estate would be better preserved if the companies were kept intact. The facts here are distinguishable from those cases where the recipient spouse conveyed away substantive marital property interests in return for specifically bargained-for payments from the paying spouse. (See *In re Marriage of Sherrick* (1991), 214 Ill. App. 3d 92,

96.) Here, Dur-O-Wal was not sold until more than 10 months after the entry of the judgment. Barbara could not have bargained away the stock proceeds in return for her maintenance package since she would not have known the value of the stock proceeds at the time she signed the original Agreement. We find the court's award to Barbara of $520,800 from the Dur-O-Wal proceeds was in "just proportions" under the dictates of section 503(d) of the Act and was not an abuse of discretion.

■ Edwin argues that, prior to the first appeal in this case, the trial court had properly considered the tax consequences of distributing the sale proceeds of the Dur-O-Wal stock to the parties, but on remand had failed to consider such consequences.

The trial court stated on remand that it considered all factors under section 503(d) of the Act, and the tax consequences of a property distribution is one of the factors to be considered by the court in making a property distribution upon dissolution of a marriage. *In re Marriage of Olson* (1992), 223 Ill. App. 3d 636, 649; Ill. Rev. Stat. 1991, ch. 40, par. 503(d)(11).

The trial court therefore considered the tax consequences in its decision to award Barbara $520,800 on remand, and we decline to rule otherwise.

■ Edwin next argues that the court should add the *present value* of the maintenance package to Barbara's assets and in turn subtract this same value from his own assets. Edwin contends the maintenance package should be considered an "annuity" or property settlement in lieu of maintenance. (See Ill. Rev. Stat. 1991, ch. 40, par. 503(d)(9).) Although the issue of maintenance is interrelated with the distribution of marital property, they are clearly not the same thing, and the concepts cannot be interchanged as Edwin would have us do here. (*In re Marriage of Lees* (1992), 224 Ill. App. 3d 691, 694.) When fixing a maintenance award, the court should consider the amount distributed to each party while retaining the separate concepts of maintenance and property distribution in its decision. (*Lees*, 224 Ill. App. 3d at 694.) Illinois law simply does not support Edwin's idea that Barbara's maintenance should be reduced to present value, added to her percentage of marital assets, and subtracted from his portion. Barbara clearly received maintenance as a means for her support, and such award should not be interchanged with property concepts.

We agree with the trial court's conclusion that an additional distribution of Dur-O-Wal stock proceeds to Barbara was consistent with the intent of section 503(d). Edwin received a much greater share of the marital assets and possesses a greater ability to earn and acquire

assets in the future. We find that the trial court did not abuse its discretion in awarding $520,800 to Barbara.

For the foregoing reasons, the trial court's distribution of the proceeds of the sale of Dur-O-Wal stock is affirmed.

Affirmed.

McLAREN and BOWMAN, JJ., concur.