In re MARRIAGE OF LENORE A. BURGESS, Petitioner-Appellee, and JOHN W. BURGESS, Respondent-Appellant.

Third District   No. 3—83—0523

Opinion filed April 10, 1984.

Martin H. Katz, of Katz, McAndrews, Durkee, Balch & Lefstein, P.C., of Rock Island, for appellant.

William M. Walker and James J. Coryn, both of Coryn, Walker and Meehan, of Rock Island, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

On March 10, 1983, the circuit court of Rock Island County entered an order dissolving the five-year marriage of John and Lenore Burgess. The subject of this appeal is the court's division of the following property which Mr. Burgess contends was nonmarital: (1) three Keough retirement accounts valued at $66,000 (hereinafter referred to as the Keough plan); (2) $7,700 which was the amount by which the cash surrender of Mr. Burgess' two life insurance policies increased during the marriage and; (3) an IRA valued at $2,000.

Prior to the marriage, the parties entered into a prenuptial agreement whereby they released all rights to one another's property whether owned at the time of the marriage or thereafter acquired. Both the Keough plan and the insurance policies were listed in a separate schedule of Mr. Burgess' assets. The IRA was not included in the schedule.

The trial court found that the prenuptial agreement was fair and was knowingly and voluntarily signed by Mrs. Burgess. However, the court did not enforce the agreement with respect to property acquired by Mr. Burgess during the marriage even though Mrs. Burgess had waived her right to such property when she signed the agreement. The only reason given by the court for treating the Keough plan as marital property was because Mr. Burgess used the plan to produce tax benefits for the parties. The court apparently felt that this conduct indicated that Mr. Burgess no longer intended to treat the plan as nonmarital property in accord with the agreement. No reason was given for the court's refusal to enforce the agreement with respect to the insurance policies and the IRA.

 Persons competent to contract may execute a valid antenuptial agreement. Although the law prescribes the rights of a husband and wife in the property of each other, persons may, by agreement, exclude the operation of the law and determine for themselves what rights they will have in each other's property during the marriage. (*Volid v. Volid* (1972), 6 Ill. App. 3d 386.) In addition to property owned prior to the marriage, the parties may also define their rights to property acquired by a spouse later in the marriage. (See Ill. Ann. Stat., ch. 40, par. 503(a)(4), Historical and Practice Notes, at 462 (Smith-Hurd 1980); 41 Am. Jur. 2d *Husband & Wife* sec. 283 (1968).) An agreement as to future acquired property, such as the one in the present case is consistent with *Volid* because it simply acts to suspend the operation of the law which generally designates property as nonmarital or marital based on whether it was acquired before or after the marriage. (Ill. Rev. Stat. 1981, ch. 40, par. 503.) In fact, the Illinois Marriage and Dissolution of Marriage Act specifically recognizes that the operation of marital property laws may be excluded by agreement.

 Illinois law presumes that property acquired during a marriage is marital property. (Ill. Rev. Stat. 1981, ch. 40, par. 503(b).) This presumption can be overcome by showing, among other things, that the property was excluded by valid agreement of the parties. (Ill. Rev. Stat. 1981, ch. 40, par. 503(a)(4).) As with any contract, a party may rescind a prenuptial agreement by engaging in a course of con-

duct which clearly evidences an intent to abandon its terms. (See *Kalman v. Bertacchi* (1980), 80 Ill. App. 3d 530.) This might occur by a commingling of marital or nonmarital property or by conduct which shows an intent to ignore the agreement and treat nonmarital property as marital property. Therefore, our inquiry turns to the question of whether any of the aforementioned events operated in the present case to rescind the prenuptial agreement and transmute nonmarital into marital property. We will start by examining the Keough plan.

It is undisputed that Mr. Burgess started the Keough plan prior to the marriage with an $11,000 deposit and that the plan increased by $55,000 during the marriage. Mrs. Burgess argues that the manner in which Mr. Burgess used and funded the plan during the marriage resulted in a commingling of marital and nonmarital property which transmuted the entire plan into marital property. She also alleges that Mr. Burgess expressed his desire to treat the plan as the property of both parties.

The $55,000 increase in the plan was attributable to contributions made by Mr. Burgess which were funded by five loans from Mrs. Burgess totaling $34,109.63. The loans drew interest according to the interest rate of the Keough plan at the time each loan was made. Mr. Burgess gave promissory notes for three of the loans.

The parties concede that the source of the loans was the separate nonmarital property of Mrs. Burgess. The record reveals that Mr. Burgess repaid the loans along with $10,732.50 in interest after he sold a house which was his nonmarital property. In summary, the Keough plan started out as Mr. Burgess' nonmarital property, which he augmented with additional nonmarital cash borrowed from his wife. Mr. Burgess then repaid the loan with interest after selling nonmarital property of his own.

The clear intent of the parties as manifested by their conduct and the prenuptial agreement was to keep their property separate whether acquired before or after the marriage. This included any separately owned property which increased in value during the marriage. By declaring the Keough plan to be marital property, the court has frustrated that intent and deprived Mr. Burgess of the nonmarital property he used to repay the loans. On the other hand, Mrs. Burgess has not only had her nonmarital property restored with interest, but has also received half of the Keough plan as a bonus.

The fact that the loan transactions produced tax benefits for both parties did not permit the court to redesignate the plan as marital property and ignore a valid prenuptial agreement. Except for sharing the tax benefits with his wife, Mr. Burgess had always treated the

Keough plan as his own separate nonmarital property.

As additional support for the trial court's ruling, Mrs. Burgess argues that by loaning her nonmarital cash to Mr. Burgess, she freed up his earned income so as to facilitate a better standard of living. This does not change the Keough plan into marital property.

The indirect benefits generated by the loan transactions were enjoyed by both parties and do not give Mrs. Burgess the right to share in the plan. If Mrs. Burgess was inconvenienced by having to loan out her money, she was well compensated by Mr. Burgess' interest payment. Simply because an item of nonmarital property produces a benefit shared by the parties does not transfer the item into marital property. *In re Marriage of Smith* (1980), 90 Ill. App. 3d 168, cited by Mrs. Burgess, does not compel the opposite conclusion.

In *Smith*, the parties owned an IRA and a Keough plan. Both plans were acquired during the marriage and there was no prenuptial agreement. The distinctions between *Smith* and the present case are self-evident. Further discussion would not be beneficial.

■ Even if there was no prenuptial agreement here, the statutory presumption that property acquired during the marriage is marital property could be overcome by other means. The initial $11,000 investment made by Mr. Burgess prior to the marriage is nonmarital property under section 503(a)(6) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 503(a)(6)), which excludes property acquired before the marriage. The $55,000 increase in value is nonmarital because it is an increase in the value of property acquired before the marriage. (Ill. Rev. Stat. 1981, ch. 40, par. 503(a)(5).) We are aware that the exclusion of section 503(a)(6) does not apply to increases attributable to contributions of the parties. In fact, such contributions can raise the presumption that the entire asset has been transmuted into marital property. (*In re Marriage of Lee* (1981), 87 Ill. 2d 64.) However, as we have pointed out, the increase in the Keough plan was attributable solely to the infusion of Mr. Burgess' nonmarital property. To the extent that Mrs. Burgess contributed to the increase, she has been repaid with interest.

Based on the foregoing, we find that the Keough plan was nonmarital property. The trial court abused its discretion by treating the plan as marital property and awarding one-half to Mrs. Burgess.

■ The same result obtains with respect to the cash surrender value of Mr. Burgess' two life insurance policies. Both policies were purchased long before the parties were married, and the policies were listed in the separate schedule attached to the prenuptial agreement. During the marriage, the cash surrender value of the policies in-

creased by $7,770.50, of which Mrs. Burgess received one-half. This was wrong.

When Mrs. Burgess signed the prenuptial agreement, she waived any right to property which might be acquired by Mr. Burgess in the future. This waiver applies to the increased cash surrender value of the insurance policies. Mrs. Burgess does not challenge the prenuptial agreement nor does she contend that Mr. Burgess did anything which transformed the increased surrender value of the policies into marital property. Therefore, the agreement controls.

■ Finally, the record shows that in 1982, Mr. Burgess made a $2,000 IRA deposit, half of which was awarded to Mrs. Burgess. Although this asset was wholly acquired during the marriage, the prenuptial agreement rebuts the presumption that it is a marital property. Mrs. Burgess does not argue that the account was treated as joint property or that she contributed to the $2,000 deposit. In fact, the record reveals that the IRA was treated as the exclusive property of Mr. Burgess since he used the account as an adjustment to income on his separate 1982 tax return. Therefore, this was property acquired solely by Mr. Burgess during the marriage and falls within the exclusion of the prenuptial agreement.

In conclusion, we find that the Keough plan, the insurance policies and the IRA, whether acquired before or after the marriage, were nonmarital property pursuant to the prenuptial agreement of the parties. The judgment of the circuit court of Rock Island County awarding one-half of this property to Mrs. Burgess is reversed. Since the trial court denied maintenance based on this division of property, the cause will be remanded for further consideration of the maintenance issue.

Reversed and remanded.

SCOTT and STOUDER, JJ., concur.