SIXTH DIVISION

April 23, 1999

No. 1-98-1174

In re
 MARRIAGE OF CHRISTINE GURDA, ) Appeal from the

) Circuit Court of

Petitioner-Appellee, ) Cook County.

)

v. )

)

JOZEF GURDA, ) The Honorable

) 
Charles E. Porcellino
,

Respondent-Appellant. ) Judge Presiding.

JUSTICE BUCKLEY delivered the opinion of the court:

In 1994, Christine Gurda filed a petition for dissolution of her marriage to Jozef Gurda.  After a trial in the circuit court of Cook County, domestic relations division, the trial judge decided the following: (1) the content of Jozef's individual retirement account (IRA) is marital property; (2) all remaining property is marital property subject to a distribution in the amount of $218,927.80; (3) Jozef dissipated net funds totalling $188,100.57; (4) Christine should be paid rehabilitative maintenance in the amount of $400 biweekly; and (5) Jozef was ordered to surrender his passport to the clerk of the circuit court until the terms of the judgment were satisfied.  Jozef appeals the judgment of the circuit court and maintains: (1) the circuit court erred in finding the IRA to be marital property; (2) the circuit court erred in finding that 

he dissipated $188,100.57; (3) the circuit court erred in awarding rehabilitative maintenance; (4) the circuit court erred in excluding evidence of whether he knew of his former attorney's five-year suspension from the practice of law; and (5) the circuit court improperly impounded his passport.  For the following reasons, we affirm in part and reverse in part.

BACKGROUND

Christine and Jozef married in 1975.  Each had one child from a prior marriage.  Together they had one child, Michelle, who was 20 years old at the time of the trial and emancipated from her parents.  Christine had previously filed dissolution proceedings in 1985 and 1991 but withdrew both petitions.

Both Christine and Jozef worked while they were married.  Jozef worked as a crane operator, as a machine operator, and most recently, as a serviceman for United Airlines (United).  His gross monthly pay at United was $3,932.77.  Christine first worked as a cleaning person and then later as an assembler.  Her gross pay at the time of trial was $2,127.86 per month.

While working as a crane operator, Jozef suffered an injury which led to the loss of a finger and loss of use of another finger.  He received $131,000 as settlement of a product liability lawsuit and another $39,200 for settlement of his workers' compensation claim.  Jozef testified at trial that he never told Christine about receipt of either settlement.

In 1991, Christine and Jozef sold real estate that they owned together and deposited the proceeds in Jozef's credit union account.  After making the deposit, there was $126,000 in the account, but Jozef withdrew approximately $120,000 and deposited it in an account at Northwest Savings and Loan.  He testified that he never told Christine he had withdrawn the funds from the credit union account.  In 1992, Jozef applied for a home equity loan.  He ultimately received a $53,000 loan but never told Christine what he was doing with the money.

After Christine dismissed her second dissolution petition, Jozef made several investments with the assistance of his attorney, James Reagan (Reagan).  According to testimony elicited at trial, Jozef opened an account in the Cayman Islands in 1992 and invested $321,000 in a company called Miller Draperies Manufacturing, Incorporated (Miller, Inc.).
(footnote: 1)  He later received notice that Miller, Inc., was going through bankruptcy and that Reagan was a shareholder in Miller, Inc., but he never filed an appearance in the bankruptcy action.  Jozef only received $39,436.69 in principal payments and $90,614.19 in interest payments in return for his investments.

On April 21, 1993, Jozef arranged a new mortgage on the marital residence.  As part of the transaction, he placed the property in a land trust and named himself as the sole beneficiary.  He authorized the trustee to deed the property to United Limited, a limited partnership.  He never told Christine about this transaction and in 1995, Jozef signed a deed as president of United Limited, deeding the marital residence back into the names of both Jozef and Christine.    

Following presentation of this evidence, the circuit court entered a judgment of dissolution of marriage and ordered Jozef to pay Christine $218,927.80.

ANALYSIS

I. IRA

Jozef first argues that the circuit court erred in classifying his IRA as marital property.  Specifically, he asserts that Christine signed a consent form relinquishing her interest in the IRA.  We disagree.

Before a court may dispose of property upon dissolution of marriage, the property must be classified as either marital or non-

marital.  
In re Marriage of Jelinek
, 244 Ill. App. 3d 496, 503 (1993).  The trial court's classification will not be disturbed on appeal unless it is contrary to the manifest weight of the evidence.  
Jelinek
, 244 Ill. App. 3d at 503.

Section 503 of the Illinois Marriage and Dissolution of Marriage Act (the Dissolution Act) provides that " 'marital pro-

perty' means all property acquired by either spouse subsequent to the marriage, except *** property excluded by valid agreement of the parties."  750 ILCS 5/503(a)(4) (West 1996).  The statute creates a presumption that "all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage *** is presumed to be marital property."  750 ILCS 5/503(b) (West 1996).  This presumption is only overcome by a showing that the property at issue falls within one of the exceptions enumerated in section 503(a) of the Dissolution Act.  750 ILCS 5/503(a) (West 1996).  

Jozef argues that since Christine signed an agreement entitled "Revocable Designation of Beneficiary[ies] for Individual Retirement Account," the IRA should have been excluded from the marital property under section 503(a)(4).  750 ILCS 5/503(a)(4) (West 1996).  The agreement at issue provided in part:

    "CONSENT OF SPOUSE

I consent to the designation of beneficiary [ies] on this Form.  I also waive all of my rights to this IRA under community property laws, except to the extent of my interest under the designation of beneficiary[ies] on this Form.  However, this waiver will terminate if my spouse [GRANTOR] amends this designation of beneficiary[ies] without my consent during my lifetime." 

It is undisputed that Christine signed this agreement on July 29, 1991.

In its order, the circuit court first decided that the agree-

ment only constituted a waiver under community property laws, and since Illinois is not a community property state, the waiver does not apply.  Second, the circuit court found that the language of the agreement only applies to naming beneficiaries, not waiving rights of equitable distribution under the Dissolution Act.  We agree with these findings.

Jozef claims that the circuit court's reading of the agreement is "strained and hyper-technical."  However, Christine correctly points out that the form merely serves to designate beneficiaries in the event of Jozef's death.  In fact, the form provided that if Jozef had amended the designation of beneficiaries during Christine's lifetime, without her consent, her waiver would have terminated.  This reading of the agreement gave Christine a continuing right to the IRA, even though she waived her status as a beneficiary.

Jozef cites 
In re Marriage of Burgess
, 123 Ill. App. 3d 487 (1984), for the proposition that property may be excluded by valid agreement of the parties.  Although a correct statement of the law, 
Burgess
 has little relevance to the case at bar.  In 
Burgess
, Mr. and Mrs. Burgess signed a prenuptial agreement releasing all rights to one another's property whether owned at the time of the marriage or acquired later.  
Burgess
, 123 Ill. App. 3d at 489.  The Keough plan at issue on appeal was expressly included in the prenuptial agreement.  
Burgess
, 123 Ill. App. 3d at 489.  The appellate court found that the clear intent of the parties "was to keep their property separate whether acquired before or after marriage."  
Burgess
, 123 Ill. App. 3d at 490.  Essential to the court's reasoning was the fact that the Keough plan started as nonmarital property and was then augmented with nonmarital cash.  
Burgess
, 123 Ill. App. 3d at 490.

Our case is very different.  The IRA in the present case was acquired with marital funds, and Jozef and Christine never exhibited the intent to segregate specific property by executing a prenuptial agreement.  Accordingly, Jozef has not presented evidence sufficient to overcome the presumption in favor of a finding of marital property.  Therefore, we find that the circuit court's finding that the IRA is marital property was not against the manifest weight of the evidence.

II. DISSIPATION

Next, Jozef argues that the circuit court erred in finding that he dissipated $188,100.57 in marital funds.  We disagree with this argument.

Determinations regarding dissipation are matters within the trial judge's discretion and may not be disturbed absent a showing of an abuse of that discretion.  
In re Marriage of Frey
, 258 Ill. App. 3d 442, 448 (1994).  The determination of an abuse of discretion does not turn upon whether the reviewing court agrees with the trial court's distribution of assets, but whether the trial court acted arbitrarily without the employment of conscientious judgment.  
In re Marriage of Drummond
, 156 Ill. App. 3d 672, 683 (1987).

Section 503(d)(1) of the Dissolution Act allows a court to take into account a party's dissipation of marital assets.  750 ILCS 5/503(d)(1) (West 1996).  Dissipation is generally defined as the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage occurring at a time that the marriage is undergoing an irreconcilable breakdown.  
Frey
, 258 Ill. App. 3d at 448; 
In re Marriage of Smith
, 128 Ill. App. 3d 1017, 1019 (1984)
.  A finding of dissipation is possible even though the dissipating party did not derive personal benefit from the dissipation of the asset.  
Frey
, 258 Ill. App. 3d at 448.    

The circuit court set a date for the "irreconcilable breakdown" of Jozef and Christine's marriage at June 22, 1990.  The court's order stated that the evidence showed that any purported reconciliation around this time was a pretext for Jozef's manipulation of marital funds.

Jozef asserts that the circuit court arbitrarily established the date of irreconcilable breakdown.  However, he testified at trial that his marriage to Christine became irretrievably broken "[a]bout 17 years" before the 1997 trial.  Although Jozef's brief states that this was a sarcastic response, this testimony is consistent with Christine's prior filings for dissolution.  Therefore, we find the circuit court acted well within its discretion when it determined the date of irreconcilable breakdown.

Next, Jozef contends that the evidence adduced at trial did not establish that he acted with improper purpose.  We also disagree with this contention.

Jozef is correct to state that he was "duped" by his attorney, Reagan.  However, this fact should not affect our decision.  The law is clear that the spouse charged with dissipation has the burden of proving, by clear and convincing evidence, how the marital funds were spent.  
In re Marriage of Charles
, 284 Ill. App. 3d 339, 343 (1996).  Then, based on the credibility of the witnesses, the trial court determines whether the funds were spent for legitimate family expenses, which were necessary and appropriate.  
Charles
, 284 Ill. App. 3d at 343.  The evidence adduced at trial clearly shows that in 1990 Jozef deposited over $100,000 from the sale of marital property into his credit union account and never told Christine.  In 1992, he received roughly $131,000 from a settlement in a personal injury lawsuit and never told Christine.  Also in 1992, Jozef received a $53,000 home equity loan secured by the marital residence but never informed Christine of the whereabouts of the proceeds.  In 1993, he received a $39,200 workers' compensation settlement and never told Christine about it.  All told, Jozef received $340,609.84 in marital funds and then invested money in Miller, Inc., using a series of Illinois and Cayman Island corporations.  

 
Drummon
 is helpful to our analysis.  There, evidence was presented that the husband was involved in commodities trading for profit during his marriage.  
Drummond
, 156 Ill. App. 3d at 684.  In finding no evidence of intent to wilfully dissipate marital assets, the court reasoned that the investments were made prior to marital discord and not in contemplation of dissolution.  
Drummond
, 156 Ill. App. 3d at 684.  By comparison, the evidence in the case at bar reflects that marital discord existed as early as 1980 and Christine had already filed for dissolution twice prior to Jozef's invest-ments.  On the basis of these facts, the circuit court could logi-cally infer that Jozef intended to dissipate marital funds in contemplation of dissolution of the marriage.  Therefore, we find that 
Drummond
 is inapposite and the circuit court was correct in finding Jozef dissipated marital funds.  See also 
In re Marriage of Rai
, 189 Ill. App. 3d 559 (1989)(finding blatant dissipation and a complete failure to account for inordinate amounts of missing funds where defendant offered vague and contradictory explanations at trial).

III.  REHABILITATIVE MAINTENANCE

Jozef maintains that the circuit court erred in awarding Christine rehabilitative maintenance and not crediting him with these payments because she would ultimately receive a windfall where sufficient property already exists.  We disagree.

A trial court's determination regarding maintenance will not be disturbed on appeal absent an abuse of discretion.  
In re Marriage of Chapman
, 285 Ill. App. 3d 377, 382 (1996).  In deciding whether to award maintenance and determining the amount of maintenance, the trial court should review and consider the relevant statutory factors, including:

"(1) the income and property of each party, including marital property apportioned *** to the party seeking maintenance;

(2) the needs of each party;

(3) the present and future earning capacity of each party;

                     * * *

(6) the standard of living established during the marriage;

(7) the duration of the marriage;

(8) the age and the physical and emotional

condition of both parties."  750 ILCS 5/504(a) (West 1996).

In accordance with these factors, the circuit court determined that Christine should receive "limited or rehabilitative mainte-

nance" of $400 biweekly "until the whole of the sum of $218,927.80 in satisfaction of her property interest is paid to her."  The court reasoned that, "[a]bsent the sums necessary to equalize the distri-

bution ordered by this Court or until it is satisfied by Mr. Gurda, Mrs. Gurda will have a shortfall of income to expenses."  Therefore, even though the circuit court awarded Christine property to provide for her long-term needs, her receipt of property is premised upon Jozef's compliance with the judgment.

We find that the circuit court did not abuse its discretion by awarding Christine rehabilitative maintenance. Rehabilitative main-

tenance is designed to enable spouses to develop the skills neces-sary to support themselves.  
In re Marriage of Ward
, 267 Ill. App. 3d 35, 42 (1994).  At the time of trial, Jozef earned almost twice as much as Christine; yet, he is eight years younger and presumably still has earning potential.  Christine is employable and not in need of permanent maintenance, but she is only employable at a lower income level that will not maintain her previous standard of living.  Therefore, an award of maintenance allows Christine to maintain her prior standard of living without selling or impairing her own capital assets in the process.  See 
In re Marriage of Tietz
, 238 Ill. App. 3d 965 (1992); 
In re Marriage of Ryman
, 172 Ill. App. 3d 599 (1988).  In addition, the maintenance provision offers Jozef an incentive to comply with the circuit court's judgment.

IV. EVIDENCE OF REAGAN'S SUSPENSION FROM PRACTICE OF LAW

Jozef next argues that the circuit court abused its discretion by not allowing evidence of Reagan's suspension from the practice of law.  We disagree.

Relevant evidence is evidence that has logical probative weight tending to prove or disprove a fact in the case.  
Gill v. Foster
, 157 Ill. 2d 304, 313 (1993).  A trial court's determination of the admissibility of evidence will be reversed if it is as an abuse of discretion.  
Gill
, 157 Ill. 2d at 312-13.

Jozef states that since the trial court found that he "knowingly used Reagan to hide and secrete assets," the court should have listened to evidence that Reagan was a bad influence on Jozef.  We find that this argument is hardly the basis to disturb the trial court's evidentiary ruling and it is not at all relevant to the real issue of Jozef allegedly concealing marital assets from his wife.  V. ORDER TO SURRENDER PASSPORT

Jozef finally asserts that the circuit court erred by interfering with his constitutionally protected right to travel by impounding his passport.  We agree and find that the circuit court erred.

A court has a duty, as well as power, to protect its jurisdic-

tion over a controversy in order to decree complete and final justice between the parties.  
Lowe v. Norfolk & Western Ry Co
., 96 Ill. App. 3d 637, 644 (1981).  For example, section 16-101 of the Illinois Code of Civil Procedure (the Code) provides that a writ of 
ne exeat republica
 may be granted in cases where a judgment debtor may leave the jurisdiction and take his property with him.  735 ILCS 5/16-101 (West 1994).  In fact, this remedy has been used in divorce cases before.  See, 
e.g.,
 
Jones v. Jones
, 323 Ill. App. 523 (1944).  To warrant the issuance of such a writ there must be a probable or threatened departure of the defendant from the state or the country, with intent to evade jurisdiction.  
Andersen v. Andersen
, 315 Ill. App. 380, 387 (1942).

Jozef argues that the circuit court violated his due process rights by 
sua sponte
 impounding his passport.  He relies on 
Califano v. Aznavorian
, 439 U.S. 170, 58 L. Ed. 2d 435, 99 S. Ct. 471 (1978), for the proposition that the freedom to travel abroad is an essential aspect of liberty and deprivation without due process constitutes a fifth amendment violation.  U.S. Const., amend. V.   In 
Califano
, the supreme court made clear that while the constitu-tional right of interstate travel is "virtually unqualified," the right of international travel can be regulated within the bounds of due process.  
Califano
, 439 U.S. at 176, 58 L. Ed. 2d at 441, 99 S. Ct. at 474-75.  However, Christine never raised the issue of Jozef leaving the jurisdiction in her petition for dissolution.  As a result, the issue was never really addressed at trial, other than a few questions to Jozef about free or reduced rate travel for employees of United Airlines.

In 
Andersen
, this court reversed the trial court's issuance of a writ of 
ne exeat republica
 because it is a remedy of great severity and the petitioner's complaint was insufficient, even though it stated that defendant had said he would leave Illinois for California.  
Andersen
, 315 Ill. App. at 389.  In the instant case, the circuit court created an injunctive remedy and ordered Jozef to "surrender his passport to this Court immediately" but provided no reasoning for its decision.  Christine's petition for dissolution did not request this measure and, as noted above, this was not an issue at trial.  Had evidence been offered that Jozef intended to flee the country the circuit court may have had a more reasonable basis for its remedy.  Therefore, although we respect the circuit court's desire to keep a party in the jurisdiction for enforcement purposes, we want to deter courts from 
sua sponte
 infringing upon a party's constitutional rights when that party has no opportunity to rebut the court's unsubstantiated suspicion of flight from the jurisdic-tion.  Accordingly, we find that the circuit court abused its discretion and vacate the circuit court's order as to the impounding of Jozef's passport.

CONCLUSION

For the aforementioned reasons, we affirm the circuit court's judgment as to the findings of marital property, dissipation of assets, maintenance and the evidentiary ruling, but reverse as to the impounding of Jozef's passport. 

Affirmed in part and reversed in part.

ZWICK and QUINN, JJ., concur.

FOOTNOTES
1:     
The record shows that the principals of Miller, Inc., personally guaranteed Jozef's investment and that he could look to them if the corporation went under.