NOTICE
Decision filed 02/24/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 230003-U

NO. 5-23-0003

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| JAMES BYRON KELLY, | ) | Lawrence County. |
| | ) | |
| Petitioner and Counterrespondent-Appellee and | ) | |
| Cross-Appellant, | ) | |
| | ) | |
| and | ) | No. 18-D-25 |
| | ) | |
| TAMMY LEE KELLY, | ) | |
| | ) | Honorable Robert M. Hopkins |
| Respondent and Counterpetitioner-Appellant | ) | and Honorable Mark L. Shaner, |
| and Cross-Appellee. | ) | Judges, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Presiding Justice Cates and Justice Sholar concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Where the trial court's findings regarding classification, valuation, and dissipation of numerous marital assets were against the manifest weight of the evidence, and where the trial court's division of those marital assets was an abuse of discretion, we reverse the trial court's orders and remand for further proceedings; we affirm the trial court's decision to deny maintenance; we find that petitioner's argument for a credit of overpaid maintenance was waived.

¶ 2   James Byron Kelly (James) filed a petition to dissolve his marriage to Tammy Lee Kelly (Tammy) on April 2, 2018. A four-day bench trial concluded on September 24, 2020. The court took the case under advisement and the parties' written closing arguments were filed in late 2020. On July 11, 2022, the court entered a "Memorandum of Decision" (Memorandum), which

1

dissolved the marriage and purported to address all remaining issues. On December 2, 2022, in response to motions for clarification and reconsideration filed by both parties, the trial court entered a supplemental order (supplemental order). In response to the motion to clarify and reconsider filed by James, the court entered a final order (final order) on April 18, 2024. Tammy filed a timely notice of appeal, and James filed a timely cross-appeal. For the following reasons, we affirm in part, reverse in part, and remand with directions.

¶ 3                          I. BACKGROUND

¶ 4     The parties were married for 27 years. James was employed at a Toyota manufacturing plant in Indiana, Tammy had at times been employed as a registered nurse. Her work history was impacted by a back injury and surgeries.

¶ 5     Two parcels of real estate were at issue. On May 15, 2018, the court entered an order granting James possession of property located at 10802 Birds Lane, in Flat Rock, Illinois (Birds Lane) and granting Tammy possession of 8990 Crawford Lane, Flat Rock, Illinois (Crawford Lane). On September 4, 2018, an agreed temporary order was entered requiring James to pay Tammy $1,500 monthly maintenance. On July 14, 2019, the court reduced James's maintenance obligation to $41.60 per month and then increased it to $200 per month on October 22, 2019.

¶ 6     In the Memorandum, the court found that the parties had used marital funds since 2004 for maintenance, repairs, and improvements to Crawford Lane, although they never resided there. The court found (1) it could not determine specific valuation amounts for marital estate contributions to Crawford Lane; (2) due to Tammy's inheritance of this property, her estate significantly contributed to its value; and (3) Crawford Lane transmuted into marital property.

¶ 7     The court classified James's Toyota 401(k) account as marital property and used a valuation date of June 30, 2019. The court divided this asset by awarding James $272,180.74 and

2

awarding Tammy $61,033.82. Instead of finding Tammy's use of $34,500 from a loan out of James's 401(k) account was dissipation, the court "accounted for it" in its division of marital property.

¶ 8    In the supplemental order, the court awarded each party "their individual wedding rings, wedding sets, and anniversary sets as their marital property." The court awarded $4,730 worth of personal property to James and $24,161 to Tammy. James was awarded Birds Lane valued at $80,000, with $15,299.66 in equity, and Tammy was awarded Crawford Lane, which was unencumbered and valued at $70,000. The court valued five guns and one gun barrel at $3,999.

¶ 9    The court awarded Tammy the proceeds of her personal injury settlement which totaled $134,336.03. The court determined that marital assets totaled $607,477.03 with debts of $49,508.29, with net divisible assets of $557,969.10. The court then awarded James $254,769.94 in assets and awarded Tammy $274,858.19 in assets. We find that this asset division totals $529,628.13—not $557,969.10, as determined by the trial court.

¶ 10    The court denied Tammy's maintenance request. The court found there was no medical evidence to support Tammy's disability claim, which was denied by the Social Security Administration. The court found that Tammy voluntarily quit her nursing employment and imputed income to her. Each party was ordered to pay their own attorney fees.

¶ 11    Tammy filed a motion for clarification and reconsideration of the Memorandum. The supplemental order found that James dissipated $10,000 and ordered him to reimburse Tammy for a July 2022 medical bill. James filed a motion to reconsider the supplemental order. On April 18, 2024, the final order vacated the requirement for James to pay Tammy for the July 2022 medical bill but failed to vacate the $10,000 judgment against James.

¶ 12                              II. ANALYSIS

¶ 13    Before beginning our analysis, we note that the trial court's Memorandum contains 135 pages. The last 35 pages is an "APPENDIX," which contains what appears to be snippets from the trial court's trial notes and references to the parties' exhibits, which should not have been included in the order. Over three-fourths of the remaining pages contain statutory citations and case law "summaries." There is very little effort made to relate this prolix recitation to the issues raised during trial. Interspersed in the remaining pages are various findings and rulings. The Memorandum can fairly be characterized, at best, as convoluted and muddled. We include additional facts in the analysis section as needed to address the parties' specific arguments.

¶ 14                              1. Transmutation

¶ 15    The trial court ruled that Crawford Lane, comprised of a house and 10 acres of land, transmuted into marital property. Tammy inherited this property on or about March 10, 2004, from her grandfather. The property remained titled in Tammy's name only. Marital funds were used to pay annual property taxes, insurance premiums, and utilities. Marital funds were also spent on several improvements/repairs, including building a pond dam, new doors, an air conditioner, a propane tank, and a water heater. There were two insurance claims for property damage. The homeowner's policy listed both Tammy and James as owners, so the insurance checks were made payable to both and deposited into their joint checking account. James testified that he personally made some of the improvements/repairs. Prior to 2016, neither party resided at Crawford Lane. The court found that neither party provided a detailed accounting of the marital funds spent on Crawford Lane for maintenance, repairs, and improvements, thus preventing an order for reimbursement. The trial court concluded that "the Crawford [L]ane real estate has transmuted to marital property."

4

¶ 16    " 'Before a court may dispose of property upon dissolution of marriage, the property must be classified as either marital or nonmarital.' " *In re Marriage of Didier*, 318 Ill. App. 3d 253, 258 (2000) (quoting *In re Marriage of Gurda*, 304 Ill. App. 3d 1019, 1023 (1999)). Section 503(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503(a) (West 2018)) provides, *inter alia*: "The court shall make specific factual findings as to its classification of assets as marital or non-marital property, values, and other factual findings supporting its property award." We will not disturb a trial court's classification of property as marital or nonmarital unless it is contrary to the manifest weight of the evidence. *In re Marriage of Berger*, 357 Ill. App. 3d 651, 659-60 (2005).

¶ 17    A reviewing court will accord a degree of deference to the trial court's fact-based determinations and will disturb them only if they are against the manifest weight of the evidence. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 154 (2005). A factual finding is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 70; *Vancura v. Katris*, 238 Ill. 2d 352, 385-86 (2010). Stated another way, a factual finding is against the manifest weight of the evidence only when, after viewing the evidence in the light most favorable to the determination at issue, the reviewing court concludes that no rational trier of fact could have made the same finding. *Briggs v. State*, 323 Ill. App. 3d 612, 618 (2001); *Durand v. Industrial Comm'n*, 224 Ill. 2d 53, 64 (2006).

¶ 18    The mere fact that an opposite conclusion is reasonable or that the reviewing court might, as the trier of fact, have reached a different conclusion based upon the same evidence does not justify a reversal of a factual determination made by the underlying fact finder. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 534 (2006). The reviewing court does not reweigh

5

the evidence or substitute its judgment for that of the trier of fact. *Board of Education of the City of Chicago v. Illinois Educational Labor Relations Board*, 2015 IL 118043, ¶ 15. The reviewing court's function is limited to ascertaining whether the factual findings at issue are against the manifest weight of the evidence. *Id.* The manifest weight standard of review is applicable to the trial court's classification of property as marital or nonmarital. *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 44.

¶ 19    Transmutation of property is defined in section 503(c) of the Act (750 ILCS 5/503(c) (West 2018)), which provides:

"(c) Commingled marital and non-marital property shall be treated in the following manner, unless otherwise agreed by the spouses:

(1)(A) If marital and non-marital property are commingled by one estate being contributed into the other, the following shall apply:

(i) If the contributed property loses its identity, the contributed property transmutes to the estate receiving the property, subject to the provisions of paragraph (2) of this subsection (c).

(ii) If the contributed property retains its identity, it does not transmute and remains property of the contributing estate.

(B) If marital and non-marital property are commingled into newly acquired property resulting in a loss of identity of the contributing estates, the commingled property shall be deemed transmuted to marital property, subject to the provisions of paragraph (2) of this subsection (c).

(2)(A) When one estate of property makes a contribution to another estate of property, the contributing estate shall be reimbursed from the estate receiving

6

the contribution notwithstanding any transmutation. No such reimbursement shall be made with respect to a contribution that is not traceable by clear and convincing evidence or that was a gift. The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property that received the contribution.

(B) When a spouse contributes personal effort to non-marital property, it shall be deemed a contribution from the marital estate, which shall receive reimbursement for the efforts if the efforts are significant and result in substantial appreciation to the non-marital property except that if the marital estate reasonably has been compensated for his or her efforts, it shall not be deemed a contribution to the marital estate and there shall be no reimbursement to the marital estate. The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property which received the contribution."

¶ 20　" 'The rationale for this rule is that the spouse's "failure to properly segregate nonmarital property, by commingling it with marital property, evinces an intent to treat the former as part of the marital estate." ' " *In re Marriage of Foster*, 2014 IL App (1st) 123078, ¶ 74 (quoting *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 672-73 (2008), quoting *In re Marriage of Wojcik*, 362 Ill. App. 3d 144, 154 (2005)). "The principle of transmutation is based on the presumption that the owner of the nonmarital property intended to make a gift of the property to the marital estate." *In re Marriage of Olson*, 96 Ill. 2d 432, 439 (1983). The donor spouse can rebut this presumption with clear and convincing evidence. *In re Marriage of Rink*, 136 Ill. App. 3d 252, 257 (1985) (quoting *In re Marriage of Severns*, 93 Ill. App. 3d 122, 125 (1981)).

7

¶ 21 There is no presumption that commingled property is always transmuted into marital property. *Foster*, 2014 IL App (1st) 123078, ¶ 93 (citing *In re Marriage of Henke*, 313 Ill. App. 3d 159, 168 (2000)). The deposit of nonmarital funds into a marital account does not automatically mean that the funds have been transmuted into marital property. *In re Marriage of Steel*, 2011 IL App (2d) 080974, ¶ 72. Instead, nonmarital property can maintain its nonmarital identity even when deposited into a marital account. *Id.* ¶ 81. To determine if the identity of nonmarital funds has changed by commingling, the court must carefully review the history of those funds. *Id.*

¶ 22 Here, the trial court found that Crawford Lane transmuted into marital property. It further found insufficient evidence of the monetary value of any marital estate contributions for maintenance, improvements, or repairs, which prevented an order for reimbursement: "Neither party has made an effort to provide detail as to the monetary value of these contributions to the non-marital estate by the marital estate."

¶ 23 The property remained titled in Tammy's name. There was evidence that marital funds were spent to pay real estate taxes, water bills, and repair expenses for the pond dam. There was also testimony that James made personal repairs to Crawford Lane, including installing a door, a fan, a fence, and a gate. However, there was no evidence that James's personal contributions substantially appreciated Crawford Lane's value. Simply maintaining the property during the marriage, without more, does not constitute a significant contribution requiring reimbursement, unless the evidence supports an increased value. *In re Marriage of Siddens*, 225 Ill. App. 3d 496, 499 (1992). We agree with the trial court that there was insufficient evidence to support an order for reimbursement. However, we find that despite payments for repairs, improvements, and maintenance from marital funds, including personal efforts of James to make some of those repairs and improvements, Crawford Lane never lost its identity as Tammy's nonmarital property.

8

Accordingly, the trial court's finding that Crawford Lane transmuted to marital property was against the manifest weight of the evidence and we remand the case with directions for the trial court to classify Crawford Lane as nonmarital property.

¶ 24                                    2. Wedding Ring Sets

¶ 25    The Memorandum listed four property items, which we can only assume consist of the "wedding sets" to which Tammy refers: "gld wedding bd 133 dia.; wdg ring 4 accent; wdg band; wdg band." The trial court classified all of these rings as marital property. It appears[1] that Tammy was awarded the "gld wedding bd 133 dia." and the "wdg ring 4 accent," while James was awarded the two items described as "wdg band." The supplemental order states: "Each party is awarded their individual wedding rings, wedding sets and anniversary sets as their marital property."

¶ 26    Tammy argues in her brief that the court erred in "finding that first two wedding sets were marital property." James contends that Tammy's argument on this issue was improperly developed in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) and is therefore forfeited. While we agree that Tammy's argument certainly lacks clarity, we decline to find it forfeited.

¶ 27    A trial court's classification of property as marital or nonmarital will not be overturned on appeal unless the classification is contrary to the manifest weight of the evidence. *In re Marriage of Veile*, 2015 IL App (5th) 130499, ¶ 12. The trial court's asset characterization is contrary to the manifest weight of the evidence when the opposite conclusion is clear or where the finding is unreasonable, arbitrary, and not based on the evidence. *In re Marriage of Woodrum*, 2018 IL App (3d) 170369, ¶ 101. The court's determination that an asset is marital or nonmarital is largely based upon the court's evaluation of witness credibility. See *In re Marriage of Hegge*, 285 Ill. App. 3d

---

[1]The Memorandum includes some sort of spreadsheet format listing each item of marital property that is difficult to decipher.

138, 140 (1996). Marital property generally includes " 'all property acquired by either spouse subsequent to the marriage.' " *Veile*, 2015 IL App (5th) 130499, ¶ 12 (quoting 750 ILCS 5/503(a) (West 2012)). "[N]onmarital property includes income derived from a gift, provided that the income is not attributable to the personal efforts of a spouse ***." *Id.*

¶ 28    While the Memorandum included an exhaustive section of case law dealing generally with classification and distribution of assets, it contains no rationale for classifying the wedding rings as marital property. Using a spreadsheet format, the Memorandum simply places values on the rings and classifies them as marital. While there is a rebuttable presumption that property acquired during a marriage is marital in nature (see *In re Marriage of Asta*, 2016 IL App (2d) 150160, ¶ 16), if the rings were acquired pursuant to an exception listed in section 503(a) of the Act, the presumption can be overcome. 750 ILCS 5/503(a) (West 2018). Nonmarital property is specifically defined as including "property acquired by gift ***." *Id.* § 503(a)(1). Assuming that the rings at issue were the first and second wedding sets, both Tammy and James agreed that they were gifts. We find that the court's classification of the wedding sets as marital property was contrary to the manifest weight of the evidence. *Woodrum*, 2018 IL App (3d) 170369, ¶ 101. Accordingly, we reverse that part of the Memorandum and remand the case with directions for the trial court to classify the wedding sets as nonmarital property.

¶ 29                                    3. Guns

¶ 30    In her brief, Tammy contends that "[t]he trial court finding of 5 guns and one shotgun barrel for $3,099.00, along with the distribution of those guns was against the manifest weight of the evidence." Tammy notes testimony that James and his father removed only his father's guns from the marital home on March 3, 2018. However, she and James had previously listed on a "balance sheet" that there were 20 guns in 2014, and in an interrogatory answer, James valued the

guns at $10,000. James asks us to find this issue forfeited for failure to comply with Illinois Supreme Court Rule 341(h)(7). While we agree that Tammy's argument on this issue is not well-developed, we again decline to apply forfeiture.

¶ 31    If by "distribution of those guns" Tammy means the trial court's *division* of the guns as marital property, we initially note that Tammy cites the wrong standard of review. Orders relating to the division of marital property in a dissolution proceeding are subject to an abuse of discretion standard of review. *In re Marriage of Vance*, 2016 IL App (3d) 150717, ¶ 53. Because there is nothing in Tammy's argument regarding why the trial court's division of the guns could be deemed an abuse of discretion, this argument fails.

¶ 32    Tammy appears to argue that because there were 20 guns allegedly in existence in 2014, and the trial court only valued 5 guns as of September 24, 2020, the trial court should have somehow accounted for the "missing" 15 guns in both its valuation and division of this asset. Tammy fails to describe any of the missing guns and speculates that a reasonable value for each gun "must be" $500. The parties to a dissolution bear the obligation to present the court with sufficient evidence of a property's value. *In re Marriage of Liszka*, 2016 IL App (3d) 150238, ¶ 40 (citing *In re Marriage of Courtright*, 155 Ill. App. 3d 55, 59 (1987)).

¶ 33    The manifest weight standard of review is applicable to a trial court's valuation of assets in a dissolution proceeding. *In re Marriage of Johnson*, 2016 IL App (5th) 140479, ¶ 75. Because there is nothing in Tammy's argument to support the conclusion that the trial court's valuation of the guns was unreasonable, arbitrary, or not based on the evidence, that argument also fails. We affirm the trial court's valuation and division of the guns.

¶ 34                          4. The Toyota 401(k) Account

¶ 35    The trial court used June 30, 2019, as the valuation date for James's Toyota 401(k) account, finding that on that date, the account had a value of $333,214.56, from which the trial court awarded $272,180.74 to James and $61,033.82 to Tammy. Tammy argues that the trial court erred by failing to use the date of trial as the valuation date and in its division of this asset.

¶ 36    With respect to the valuation date, the Memorandum states, *inter alia*:

"[T]he court was inclined to value the Toyota 401K as of the date of trial. However, due to recent stock market instability (recent to July 11, 2022) the court, out of an abundance of caution, has determined to make its 401K division partially contingent on the Toyota 401K value as of the date of this order. *** There is a substantial likelihood that the Toyota 401K value as of the date of this order will be much lower than the value in February 2020, which is the latest value which is in the duly admitted evidence. However, the court will not use the April 2018 date either. Rather, the court will use the date of the hearing on temporary relief, June 30, 2019. *** The court is using this value to avoid protracted litigation likely to result from a fully contingent ruling which would be necessary if the court used the 2020 date.

         ***

         Accordingly, the court values the Toyota 401K retirement account of Petitioner James Kelly in the amount of $333,214.56 as of June 30, 2019. However, the court makes this valuation contingent: in the event that the value of James's Toyota 401K *** for a valuation date as of the date of this order (to whit July 11, 2022) is 10% or more less than $333,214.56, then the 401K amount to be divided will be such lower amount and it will be divided in the same proportions as in the instant order. On the other hand, if on July 11,

12

2022, the Value of James's Toyota 401K account *** is not 10% or more lower than $333,214.56, such contingency shall not apply and the amount divided shall be $333,214.56."

Section 503(f) of the Act provides:

"In a proceeding for dissolution of marriage ***, the court, in determining the value of the marital and non-marital property for purposes of dividing the property, has the discretion to use the date of the trial or such other date as agreed upon by the parties, or ordered by the court within its discretion, for purposes of determining the value of assets or property."

750 ILCS 5/503(f) (West 2018).

The Act expressly vests the trial court with discretion to select a valuation date. "[A]n abuse of discretion occurs only where no reasonable person would take the view adopted by the court." *In re Marriage of DeRossett*, 173 Ill. 2d 416, 422 (1996).

¶ 37    The parties failed to agree on a valuation date. The trial court used June 30, 2019, as the valuation date of the 401(k) account instead of September 24, 2020, which was the last date of trial testimony, and the date the trial court used to value the other assets. By inexplicably waiting almost two years to make a decision, the trial court created the very market fluctuation about which it raised concern. The trial court failed to articulate a coherent rationale for the decision to use a different valuation date for the 401(k) account which was not the same as the date used to value all other assets. The court "must be consistent in setting a valuation date." *In re Marriage of Budorick*, 2020 IL App (1st) 190994, ¶ 63. We find that the trial court abused its discretion by failing to value James's Toyota 401(k) account as of the same date used to value all other asserts, September 24, 2020.

13

¶ 38    The trial court divided the Toyota 401(k) account, which was the parties' most valuable marital asset, by awarding James 81.7% of the total amount while awarding Tammy 18.3%. Section 503(d) of the Act provides the framework for a trial court's division of marital property "without regard to marital misconduct in just proportions" considering all relevant factors, including:

"(1) each party's contribution to the acquisition, preservation, or increase or decrease in value of the marital or non-marital property ***;

(2) the dissipation by each party of the marital property ***;

(3) the value of the property assigned to each spouse;

(4) the duration of the marriage;

(5) the relevant economic circumstances of each spouse when the division of property is to become effective ***;

* * *

(8) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;
***

(10) whether the apportionment is in lieu of or in addition to maintenance; [and]

(11) the reasonable opportunity of each spouse for future acquisition of capital assets and income ***." 750 ILCS 5/503(d) (West 2018).

¶ 39    The division of marital property in a dissolution action must be equitable. *In re Marriage of Gaumer*, 336 Ill. App. 3d 1012, 1015 (2003). However, an equitable division does not require mathematical equality. *Id.*

¶ 40    Tammy argues that the trial court's division of the Toyota 401(k) account was not equitable. We agree. The trial court provides no reasoning to support its decision to divide the parties' most valuable marital asset in such an inequitable manner. Accordingly, we find that the trial court's division of James's Toyota 401(k) account was an abuse of discretion, and we remand the case with directions for the trial court to equitably divide this asset.

¶ 41    5. Classification of Money Tammy Received From Others as Loans or Gifts

¶ 42    Tammy contends that the trial court erred in finding that money she received from Diane Attaway (Attaway), her mother, and from Brad Yockey (Yockey), her paramour, was intended as gifts, instead of loans. A transfer from a parent to a child is construed as a gift. *Romano*, 2012 IL App (2d) 091339, ¶ 46 (citing *In re Marriage of Hagshenas*, 234 Ill. App. 3d 178, 186 (1992)). That presumption can be overcome by clear and convincing evidence to the contrary. *Hagshenas*, 234 Ill. App. 3d at 186 (citing *In re Marriage of Agazim*, 147 Ill. App. 3d 646, 648 (1986)). Clear and convincing evidence requires "the quantum of proof that leaves no reasonable doubt in the mind of the fact finder as to the truth of the proposition in question." *Bazydlo v. Volant*, 164 Ill. 2d 207, 213 (1995). The presumptions that property acquired during the marriage is marital in nature and that a parent's transfer of property to a child is a gift cancel each other out. *Hagshenas*, 234 Ill. App. 3d at 187 (citing *In re Marriage of Landfield*, 209 Ill. App. 3d 678, 696 (1991)). "[T]hus, the trial court is free to determine the issue of whether the asset in question was marital or nonmarital property without resort to the presumption." *Id.*

¶ 43    Attaway testified that she paid some of Tammy's bills, stating that doing so was what a mother does for her child. Attaway never testified that she expected Tammy to repay her. In addition, the record contains no documentary evidence to establish that the payments were intended as a loan. We find that Tammy failed to establish by clear and convincing evidence that

15

that the money she received from her mother was intended as a loan. *Hagshenas*, 234 Ill. App. 3d at 186 (citing *Agazim*, 147 Ill. App. 3d at 648), and we agree with the trial court's finding that it was a gift.

¶ 44    Yockey testified that throughout the proceedings, he had loaned Tammy a substantial amount of money. Tammy admitted that she and Yockey were romantically involved, and during the divorce proceedings, she began living with him. The trial court concluded that the money Yockey provided to Tammy constituted a gift. "A court of review should not second-guess the trial court's factual findings on the validity of a debt when that finding is based upon the trial court's assessment of the credibility of witnesses and the weight it gives to their testimony [citations], unless the trial court's findings are against the manifest weight of the evidence." *In re Marriage of Blazis*, 261 Ill. App. 3d 855, 869 (1994) (citing *In re Marriage of Jacks*, 200 Ill. App. 3d 112, 119 (1990); *In re Marriage of Click*, 169 Ill. App. 3d 48, 57 (1988); and *Szesny v. Szesny*, 197 Ill. App. 3d 966, 973 (1990)). The trial court was in the best position to determine the credibility of the witnesses. Accordingly, the trial court's finding that money Tammy received from Attaway and Yockey was a gift is not contrary to the manifest weight of the evidence (*id.*), and we affirm that part of the Memorandum.

¶ 45                6. $10,000 Gift From Tammy to the Marital Estate

¶ 46    Tammy next contends that the trial court erred in ruling that the $10,000 she received from her grandparents and used as partial payment for Birds Lane lost its identity as nonmarital property and became a gift to the marital estate. The court noted that there was no written document about the $10,000. Both of her grandparents were deceased by the time the dissolution petition was filed. The court stated that because Tammy did not claim or seek interest on the $10,000 before this case was filed, the $10,000 "loan" is treated as commingled with the value of the Birds Lane property.

16

"Accordingly[,] it is treated as a gift either by the grandparents o[r] by Tammy to the marital estate."

¶ 47    Property acquired after marriage by any source is construed as marital property. 750 ILCS 5/503(b)(1) (West 2018). "The presumption of marital property is overcome by showing through clear and convincing evidence that the property was acquired by a method listed in subsection (a) of this Section ***." *Id.* Property acquired by gift is treated as nonmarital property. *Id.* § 503(a)(1).

¶ 48    As noted earlier, there is no presumption that commingled property is automatically transmuted into marital property. *Foster*, 2014 IL App (1st) 123078, ¶ 93 (citing *Henke*, 313 Ill. App. 3d at 168). To determine if the identity of these gifted nonmarital funds changed by commingling, the history of those funds must be scrutinized. *Id.* The testimony is undisputed that the $10,000 gift from Tammy's grandparents was used by Tammy as a down payment on the marital residence. Accordingly, we find that the trial court's classification of this $10,000 gift as transmuted marital property was not contrary to the manifest weight of the evidence. *Berger*, 357 Ill. App. 3d at 659-60.

¶ 49                            7. Dissipation of Marital Assets

¶ 50    Tammy argues that the trial court's finding that James dissipated only $10,000 of the $32,400 he withdrew from an account during the dissolution proceedings was erroneous. With respect to the issue of dissipation, the Memorandum recites a plethora of case law, with no effort to relate any of those cases to the specific facts of any dissipation finding against James. As to Tammy, the Memorandum states:

        "The court finds that Tammy has not accounted for the expenditure of at least
    $34,500 of the $50,000 borrowed through James's 401K in loan #1. Her testimony, without
    documentation, that this has been spent on living expenses does not meet her burden of

17

proof to rebut the *prima facie* case of dissipation in this amount. However, the court will not assess this directly against her but *will consider it as a factor in dividing the property and debt*." (Emphasis added.)

¶ 51    In response to a motion for reconsideration filed by Tammy, the supplemental order provides: "The court supplements its prior ruling and finds that a portion of the $32,400.00 in cash withdrawals made by James Kelly was dissipation. The court taking the dissipation of James Kelly into account awards Tammy Kelly an additional $10,000.00 of property. A judgment is entered in favor of Tammy Kelly and against James Kelly in the amount of $10,000.00." In response to James's motion to reconsider the supplemental order, the final order provides, *inter alia*: "With respect to the dissipation of marital assets, the court finds that neither party filed a claim for dissipation as required by 750 ILCS 5/503(d)(2). The court finds both parties were seeking a finding of dissipation of marital assets and the court considered the dissipations of both parties in the division of assets." Despite specifically finding that neither party filed the statutorily required notice of dissipation, the trial court failed to reverse its ruling that James dissipated $10,000 of marital assets and failed to vacate the judgment entered against him in that amount.

¶ 52    In his cross-appeal, James contends that because Tammy never filed the statutorily-required notice of dissipation, the supplemental order finding that he dissipated $10,000 should be vacated. Section 503(d)(2)(i) of the Act states that "a notice of intent to claim dissipation shall be given no later than 60 days before trial or 30 days after discovery closes, whichever is later." 750 ILCS 5/503(d)(2)(i) (West 2018). The legislature's use of the word "shall" means that compliance with the notice provision is mandatory. See *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 97 (1990). Thus, if the notice of intent to claim dissipation was not timely filed which would place the other party on notice, then the court cannot consider a claim of dissipation. *In re*

18

*Marriage of Hamilton*, 2019 IL App (5th) 170295, ¶ 73 (citing 750 ILCS 5/503(d)(2)(i)). The question of whether a notice of intent to claim dissipation complied with applicable law is reviewed *de novo. In re Marriage of Vancura*, 356 Ill. App. 3d 200, 204 (2005).

¶ 53     Here, discovery continued until July 2020, at which time the trial was ongoing. Thus, Tammy could have filed a dissipation notice as late as August 2020 but failed to do so. She also failed to file a motion for leave to file a late dissipation notice. Tammy contends that she did not file a dissipation notice because she was unaware of the Fifth Third bank account until trial, and that James's production of documents during trial obviated the need for formal notice. Those arguments are unavailing. Had Tammy filed the notice, the trial court would have had the option to continue the trial to allow both parties the ability to conduct appropriate discovery. Tammy could have had the opportunity to better establish her dissipation claim, and James would have had the opportunity to defend it.

¶ 54     Further, despite Tammy's claim that she was unaware of the Fifth Third bank account before trial, the record reflects otherwise. On August 28, 2019, Tammy's attorney filed a notice of deposition of the custodian of records at the Fifth Third bank Vandalia branch along with a subpoena for the bank records. Thereafter, Tammy indicated in a court filing that dissipation may be an issue. Discovery continued, and on June 22, 2020, Tammy filed a request asking James to produce Fifth Third bank account statements and filed a proposed property apportionment which included that bank account. At trial, on July 27, 2020, Tammy's attorney questioned James about the account and about his withdrawals from that account between April 2018 and September 2019.

¶ 55     The requirement to file a notice of dissipation is mandatory. 750 ILCS 5/503(d)(2)(i) (West 2018). Tammy failed to comply with the statute and her argument for waiver is unpersuasive. Accordingly, the trial court's decision to factor dissipation into its division of assets and debts was

19

error. We reverse the trial court's ruling that James dissipated $10,000 in marital assets and vacate the $10,000 judgment entered against him. The fact that the trial court erroneously factored in the dissipation of both parties in its division of property and debts necessitates that the case be remanded with directions for the trial court to reconsider the division of property and debts consistent without any consideration of disposition. The remand shall also encompass the debts about which James makes complaint in his cross-appeal.

¶ 56                             8. Foreclosure on the 40-Acre Parcel

¶ 57    Tammy next argues that the trial court erred in finding that James's failure to pay the mortgage on a 40-acre parcel, which resulted in a foreclosure on the outstanding loan, did not constitute dissipation. Alternatively, she argues that James's failure to make those mortgage payments should have been treated as an offset to his property award. Because we have previously found that Tammy failed to file the requisite statutory notice of intent, her dissipation argument fails. We find no error in the trial court's failure to treat the missed mortgage payments as an offset to James's property award.

¶ 58                             9. Imputed Income and Maintenance

¶ 59    Following another exhaustive recitation of case law and having considered the factors set forth in section 504(a) of the Act (750 ILCS 5/504(a) (West 2018)), the trial court denied Tammy's request for an award of maintenance. The trial court supported its reasoning with specific references to each relevant statutory factor. The court imputed income to Tammy, stating:

“In light of the evidence presented at bench trial, showing the employment history of Tammy since 2012, and her quitting her employment in connection with the parties' argument of 2018 which concerned her relationship with Bradley Yockey; and also considering the lack of medical evidence presented at trial in support of her assertion of

20

disability; and also considering the denial of her disability claim by the Social Security, the court finds that this factor does not favor Respondent."

¶ 60 For reasons that are unclear, the trial court then stated: "In the event that it is deemed appropriate to award maintenance in this case, the court sets forth below its (alternative) maintenance calculation in this case." After imputing gross annual income to Tammy in the amount of $56,160, the court made a mathematical calculation to arrive at a monthly maintenance award of $540.49.

¶ 61 Tammy argues that the trial court erred by imputing income to her and denying her request for maintenance. The propriety of a maintenance award is within the trial court's discretion, and the court's decision will not be disturbed absent an abuse of discretion. *In re Marriage of Sturm*, 2012 IL App (4th) 110559, ¶ 3. An abuse of discretion will only be found if no reasonable person would accept the view of the trial court. *Id.* (citing *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 52; *In re Marriage of Schneider*, 214 Ill. 2d 152, 173 (2005)). For purposes of imputing income, a court must find one of the following: (1) the party has become voluntarily unemployed, (2) the party is attempting to evade a support obligation, or (3) the party has unreasonably failed to take advantage of an employment opportunity. *In re Marriage of Blume*, 2016 IL App (3d) 140276, ¶ 30.

¶ 62 We do not reach the issue of imputed income, because we find that the trial court's decision to deny maintenance was correct based upon cohabitation. "[W]e may affirm the trial court 'for any reason or ground appearing in the record regardless of whether the particular reasons given by the trial court, or its specific findings, are correct or sound.' (Internal quotation marks omitted.)" *Akemann v. Quinn*, 2014 IL App (4th) 130867, ¶ 21 (quoting *BDO Seidman, LLP v. Harris*, 379 Ill. App. 3d 918, 923 (2008)).

¶ 63    The testimony established that Tammy was in a romantic relationship with Yockey and began living with him full time in May to June of 2019. In referencing the catch-all factor in section 504(a)(14), the trial court made the following findings:

> "The court also finds that Tammy began a romantic relationship with Bradley Yockey in 2016 if not before. He testified on her behalf at the bench trial. The testimony showed that he helped her remove a substantial amount of marital property from the marital residence while hs [*sic*] had an *ex parte* order of protection against James. The testimony also showed that Tammy received significant amounts of money from Bradley Yockey during the pendence [*sic*] of the petition for dissolution and that, as of the time of trial, she was residing with him. The testimony indicates that this is a continuing relationship likely to continue into the future."

¶ 64    Section 510(c) of the Act provides that "the obligation to pay future maintenance is terminated *** if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." 750 ILCS 5/510(c) (West 2018). Accordingly, we affirm the trial court's decision to deny Tammy's maintenance request. James argues that the trial court abused its discretion by not crediting him with the amount of maintenance payments he made after Tammy and Yockey began cohabiting. However, James never filed any pleading before, during, or after trial, seeking an order from the trial court to terminate his obligation to continue making those payments or for a credit to him for any overpayments. We therefore find that this argument has been waived. See *In re Marriage of Thornton*, 373 Ill. App. 3d 200, 207 (2007) ("*[T]he Act requires that a petition must be filed* and the requisite findings concerning conjugal cohabitation must be made before a court-imposed obligation to pay maintenance as ordered can be terminated." (Emphasis added.)).

22

¶ 65                                    10. Attorney Fees

¶ 66    Tammy next argues that the trial court erred in ordering her to pay her own attorney fees. Section 508(a) of the Act provides that the court, "after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees." 750 ILCS 5/508(a) (West 2018). The trial court's decision to grant or deny a request for attorney fees will not be disturbed absent a clear abuse of discretion. *In re Marriage of Calisoff*, 176 Ill. App. 3d 721, 731 (1988) (citing *In re Marriage of Sevon*, 117 Ill. App. 3d 313, 319 (1983)).

¶ 67    The trial court's ruling on the issue of fees consisted of the following statement: "Each party is ordered to pay his or her own attorney's fees incurred in proceedings in this case." We find that our direction for the trial court to reconsider the asset and debt division necessitates a reconsideration of an award of attorney fees. Here, there was no issue that James's gross wages in 2019 were $76,789.73, with net income of $61,600.53, whereas Tammy's gross wages were $1,600 for that same year. Thus, the financial disparity between the parties was great, even considering Tammy's cohabitation with Yockey. We are reversing and remanding this issue to the trial court for reconsideration after addressing all issues we have highlighted for remand.

¶ 68                                    III. CONCLUSION

¶ 69    For the above reasons, we affirm in part, reverse in part, and remand with directions the orders of the Lawrence County circuit court.


¶ 70    Affirmed in part and reversed in part; cause remanded.